## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JOHN FLYNN, et al.,**

        **Plaintiffs,**

        **v.**

**TIEDE-ZOELLER, INC., et al.,**

        **Defendants.**

**Civil Action 03-00981  (HHK)**

## MEMORANDUM OPINION AND ORDER

In this action, the trustees of the Bricklayers & Trowel Trades International Pension Fund ("Trustees" or "Fund"), a multi-employer employee benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, allege that Tiede-Zoeller Tile Corp. ("TZ Corp."), Tiede-Zoeller, Inc. ("TZ Inc."), and Tiede-Zoeller Associates, Inc. ("TZ Associates") (collectively, "Tiede-Zoeller") failed to make certain contributions to the Fund and several related funds in violation of ERISA. Before the court is Tiede-Zoeller's motion to dismiss the amended complaint (Dkt. #16)[1] and its motion to bifurcate (Dkt. #26). Upon consideration of the motions, the oppositions thereto, and the record of this case, the court concludes that the motion to dismiss must be granted in part and denied in part, and the motion to bifurcate must be denied.

---

[1] Tiede-Zoeller's motion to dismiss the amended complaint was originally styled as a motion for judgment on the pleadings. Because this court permitted the Trustees to amend their original complaint, *see Flynn v. Tiede-Zoeller, Inc.*, No. 03-00981, slip op. (D.D.C. Nov. 29, 2003), Tiede-Zoeller elected to characterize their motion as a motion to dismiss rather than file an answer to the amended complaint.

# I. BACKGROUND

The Fund provides pension and other benefits to employees working in the building and construction industry under collective bargaining agreements negotiated between local unions and employers.  Pursuant to these agreements, employers are obligated to make contributions to the Fund in order to pay for the benefits provided to the Fund's beneficiaries.  Employers are also obligated to submit monthly reports that detail the number of hours employees have worked that are covered by the collective bargaining agreements.  The Trustees have a fiduciary duty under ERISA to collect delinquent employer contributions and can be held personally liable for their failure to do so.[2]

The instant case arises from a series of collective bargaining agreements to which the Fund asserts TZ Corp. was a party.  At the forefront of the dispute is an agreement between TZ Corp. and the International Union of Bricklayers and Allied Craftsmen ("BAC"), Southern Tier Administrative District Counsel, New York,[3] an affiliate of the International BAC ("Southern Tier Agreement").[4]  In addition to the "Southern Tier Agreement," the Fund asserts that TZ Corp. entered into three other collective bargaining agreements that, taken together, form the basis for Tiede-Zoeller's liability.  These agreements include (1) an agreement with BAC Local No. 3,

---

[2]  The Bricklayers & Trowel Trades International Pension Fund is authorized to effect collections on behalf of the following entities: the Bricklayers & Trowel Trades International Pension Fund, the BAC International Health Fund, the International Masonry Institute, and the International BAC.

[3]  The Southern Tier Administrative District Counsel, New York, encompasses Local Union Numbers 12, 17, 40, and 42.

[4]  Tiede-Zoeller disputes that it was ever bound by the Southern Tier Agreement, arguing that it is void *ab initio*.

Buffalo, N.Y., Chapter ("New York Agreement"); (2) an agreement with BAC Subordinate Local No. 33, Georgia, North Carolina, and South Carolina ("BAC Local, Georgia"), effective June 5, 2001 ("Georgia June Agreement); and, finally; (3) an agreement with BAC Local, Georgia, effective July 1, 2001 ("Georgia July Agreement").

Each of these agreements, to varying degrees, obligated TZ Corp. to make contributions to the Fund.  While only TZ Corp. was a signatory to each agreement, the Fund maintains that TZ Inc. and TZ Associates were also obligated by the collective bargaining agreements, and pursuant to ERISA, to make payments to the Funds.  According to the Trustees, TZ Inc. and TZ Associates shared "the same place of business, interlocking directors, common control, common type of work, and same or similar employees" with TZ Corp.  Compl. ¶ 17.  Based on this alleged relationship, the Trustees insist that TZ Inc. and TZ Associates were "alter egos," of TZ Corp., and thus subject to the terms of the collective bargaining agreements executed by TZ Corp.  Despite this alleged duty to comply with the agreements, the Trustees maintain that neither TZ Inc. nor TZ Associates prepared reports documenting the hours worked by covered employees, nor made any actual contributions.

The Trustees initiated the instant action to obtain permission to audit the financial records of each of the Tiede-Zoeller's companies, determine the amount of Tiede-Zoeller's delinquent contributions and, eventually, collect any contributions owed to the Fund.

Tiede-Zoeller now moves to dismiss the Trustees' amended complaint and to bifurcate the issues raised therein.

## II.  DISCUSSION

### A.  Legal Standard

A motion to dismiss is appropriate "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Martin v. Ezeagu*, 816 F. Supp. 20, 23 (D.D.C. 1993) (internal quotations omitted); *see Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) (stating that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").  In addition, the court must construe the complaint in a light most favorable to the plaintiff and must accept as true all reasonable factual inferences drawn from well-pleaded factual allegations.  *In re United Mine Workers of Am. Employee Ben. Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994); *see also Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (stating that the court must give the plaintiff "the benefit of all inferences that can be derived from the facts alleged").  In evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court is limited to considering facts alleged in the complaint, any documents either attached to or incorporated in the complaint, matters of which the court may take judicial notice, *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997), and matters of public record, *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 n.6 (D.C. Cir. 1993).

In the instant case, the parties have submitted a number of declarations and documents in support of, and in opposition to, Tiede-Zoeller's pending motions.  Accordingly, the court notes that when matters outside the pleadings are presented to and not excluded by the court, and the court assures itself that such treatment would be fair to both parties, a motion to dismiss may be

treated as one for summary judgment and disposed of as provided in Fed. R. Civ. P. 56.  *See* Fed.

R. Civ. P. 12(b); *Americable Int'l Inc. v. Dep't of the Navy,* 129 F.3d 1271, 1274 n.5 (D.C. Cir.

1997); *Marshall County Health Care Auth.,* 988 F.2d at 1227.  The decision to convert a motion

to dismiss into a motion for summary judgement, however, is committed to the sound discretion

of the trial court.  *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 1366 at 159 (3d ed. 2004).  Here, the court concludes that such treatment would be

premature as the declarations submitted to the court are largely self-serving, and/or contradicted

by opposing declarations.[5]  As such, the conversion of Tiede-Zoeller's motion would do little to

resolve the issues presented in this case.[6]  In the absence of more extensive discovery, the court

does not find it appropriate to consider the factual issues raised by these outside materials.

---

[5]  The second declaration of Anne Sweirat, the Fund's auditor, illustrates the limited value of these documents.  Pl. Mem. in Opp. to. Mot. to Dismiss, Ex. A.  The declaration purports to establish that, regardless of the Traveling Contractors clause, TZ Corp. has failed to meet its obligations to contribute to the Fund.  In addition, the declaration asserts that TZ Corp. has made at least some contributions to the Fund consistent with the terms of the Southern Tier Agreement.  The defendant, however, has not been afforded an opportunity to have its accountant review her findings, and thus the court is left with uncontroverted testimony that Tiede-Zoeller has had limited ability to challenge.

Similarly, the declaration of Michele Rubino Graap suggests that she had no authority to execute a collective bargaining agreement on TZ Corp.'s behalf, therefore rendering the Southern Tier agreement invalid.  Godfrey Decl., Ex. H.  This assertion, however, is contradicted by the declarations of Mark Babbage, a representative of BAC Local 3, Buffalo, New York, Opp. to Mot. for J. on the Pleadings, Ex. E, and Ira Mitzner, Opp. to Mot. for J. on the Pleadings, Ex. A, which both submit that Ms. Graap did indeed act as president of TZ Corp.

[6]  For the same reasoning, the court rejects Tiede-Zoeller's invitation to determine that the Southern Tier Agreement is void *ab initio*.  This argument turns on questions of fact—among them, whether Ms. Graap had authority to bind TZ Corp. to the agreement—that are simply not ripe for adjudication at the present time.

**B.  Exhaustion of Arbitration/Grievance Procedures**

Tiede-Zoeller's first contention in support of its motion to dismiss is that the Trustees'

claims pursuant to Section 301 of the National Labor Relations Act, 29 U.S.C. § 185, are barred

by a failure to exhaust the contractual grievance procedures set forth in the collective bargaining

agreements at issue.  Tiede-Zoeller asserts that, assuming that it is bound by the terms of the

collective bargaining agreements, plaintiffs are required to submit their complaint to arbitration

prior to the initiation of a civil action.[7]

As a threshold matter, the court believes that—despite extensive briefing—Tiede-

Zoeller's argument remains somewhat ambiguous.  Tiede-Zoeller's arguments are apparently

directed towards the propriety of the International BAC pursuing claims pursuant to Section 301.

The International BAC is not, however, a party to this action.[8]  As discussed above, this lawsuit

---

[7]  An example of the applicable grievance clauses is found in Article XI (B) of the
Southern Tier Agreement, Am. Compl., Ex. A:

> It is specifically agreed that any controversy arising out of this Agreement involving the
> interpretation of its terms and conditions, shall be settled in accordance with the
> grievance procedure set forth in this Article.  No grievance shall be recognized unless it is
> called to the attention of the Employer by the Union or to the attention of the Union by
> the Employer within five (5) days after the alleged violation is committed or discovered.

[8]  The confusion may stem, in part, from the manner in which the Trustees have couched
the amendments to their complaint.  Indeed, one of the modifications made by the Trustees was
the addition of a citation to Section 301 of the Labor Management Relations Act in order to "set
forth the jurisdictional basis for the claims of the BAC under the LMRA."  Pl.'s Mot. to Am. at
7.  Notwithstanding this reference to the "claims of the BAC," the International BAC was not
added as a party to this action.

Moreover, which allegations constitute the "BAC claims" is not self-evident after a
review of the amended complaint.  While the Trustees' briefs in support of their motion to amend
the complaint, and in opposition to Tiede-Zoeller's various motions, suggest that these claims
consist of a demand for unpaid "dues checkoffs," the complaint itself is devoid of any such
reference.  The court notes that "a checkoff system is a procedure whereby an employer deducts
union dues directly from employees' wages and submits such sums to the union," *Flynn v.*

is brought by the Trustees of the Bricklayers & Trowel Trades International Pension Fund, an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and a "multiemployer plan," as defined in Section 3(37) of ERISA, 29 U.S.C. § 1002(37), authorized to effect collections on behalf of various entities, among them, the International BAC. Tiede-Zoeller's briefs in support of its respective motions muddle the distinction between the Trustees and the International BAC, a distinction that carries significance. Nonetheless, because the Trustees, by their own admission, bring certain claims on behalf of the International BAC, the court will assume that whatever exhaustion requirements would apply to the International BAC, similarly would be applicable to the Trustees with respect to the claims asserted on the International BAC's behalf.

### 1. Local Union and International BAC as Single Entity

Turning to the merits of Tiede-Zoeller's argument, the record demonstrates that the signatories to the collective bargaining agreements are the local union bodies— (i) Southern Tier Administrative District Council 91, New York (ii) Local Union No. 3 N.Y. Buffalo Chapter, and (iii) Local No. 33 Georgia/North Carolina/South Carolina. *See* Am. Compl. Ex.'s A, B, C, & D. While acknowledging this fact, Tiede-Zoeller insists that the local unions and the international are a unified entity—thus the International BAC is responsible for any and all obligations incurred by the local affiliates.

Contrary to this assertion, however, it is well settled that in the absence of statutory or applicable common-law rules of agency, international unions and their local affiliates are

---

*Mastro Masonry Contractors*, 237 F. Supp. 2d 66, 68 n.1 (D.D.C. 2002) (citing BLACK'S LAW DICTIONARY (6th ed. 1990)), and will presume this is what the parties believe to be the "BAC claims."

considered separate and distinct bodies.  *See United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1453–54 (9th Cir. 1989); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1215 (9th Cir. 1980).  Similarly, the limited factual evidence offered in support of this proposition[9]—that the Constitution of the International BAC states that the "International Union shall be composed of the Local Unions which created it . . ." and that, in separate forms filed with the Department of Labor, both the local and international unions identify their affiliation as the "bricklayers AFL-CIO"—provides an insufficient basis upon which to find that, as a matter of law, there is no distinction between the two entities.

### 2.  Local Union as Agent of International BAC

While Tiede-Zoeller's cited authority fails to supports the proposition that the international union and its local chapters are a unified entity, a broad reading of defendants' motions suggests an alternative argument—that the local union acted as an agent of the international.  Here, the caselaw indicates that an international union may be responsible for the acts of its local affiliates if the international union invests the local chapter with the apparent authority to bind the international union.  *See Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 216–17 (1979) ("[T]o effectuate § 301(a), the Taft-Hartley Act provided in § 301(b) that a union 'shall be bound by the acts of its agents,' and in § 301(e) provided that the common law of agency shall govern 'in determining whether any person is acting as an 'agent' of another person.'"); *United Constr. Workers v. Haislip Baking Co.*, 223 F.2d 872, 878 (4th Cir. 1955)

---

[9]  As mentioned previously, the court has declined to convert Tiede-Zoeller's motion to dismiss into one for summary judgment.  While the court may consider matters of public record without converting Tiede-Zoeller's motion to one for summary judgment, *see Marshall County Health Care*, 988 F.2d at 1226 n.6, the court nevertheless finds that there is inadequate evidence that the local affiliates and International BAC operated as a single entity.

(same); *Laborers Int'l Union v. HSA Contractors, Inc.*, 728 F. Supp. 519, 524–25 (E.D. Wisc. 1989) (finding no facts supported contention that international union invested local chapter with apparent authority to enter a collective bargaining agreement on its behalf); *cf. Blake Constr. Co. v. Laborers' Int'l Union*, 511 F.2d 324, 329–30 (D.C. Cir. 1975) (examining whether international union had power to bind local affiliates to arbitration).

Though the assertion of an agent-principal relationship is a cognizable theory of liability, the court notes that, "[g]enerally, the existence and scope of agency relationships are factual determinations." *Laborers Int'l Union*, 728 F. Supp. at 525 (citing *NLRB v. Donkin's Inn*, 532 F.2d 138, 141 (9th Cir 1976)). In addition, the burden of proving apparent authority rests with the party asserting that the act of the agent was authorized by the principal. *See Moreau v. James River-Otis, Inc.*, 767 F.2d 6, 10 (1st Cir. 1985). Based on the pleadings and the record before the court, Tiede-Zoeller has not met this burden.

### 3. The International BAC as Third-Party Beneficiary

In the alternative, Tiede-Zoeller's asserts that because the International BAC is a third-party beneficiary of the collective bargaining agreement the International BAC is required to abide by the arbitration/grievance clauses set forth in those agreements.[10] This final argument in

---

[10] When making a determination as to whether an entity is a third-party beneficiary to a labor agreement, courts typically apply local law to the extent that it is compatible with federal labor policy. *See* 20 Williston on Contracts § 55:59 (4th ed. 2005). In the District of Columbia, "[a] third-party to a contract may sue to enforce its provisions if the contracting parties *intend* the third-party to benefit directly thereunder." *Fields v. Tillerson*, 726 A.2d 670, 672 (D.C. 1999) (quotations omitted). Here, the collective bargaining agreements make clear that union dues are to be collected for, and remitted to, the International BAC by the employer, in this case, Tiede-Zoeller. Based on this language, the court finds that the International BAC was an intended third-party beneficiary of the collective bargaining agreements.

support of requiring the International BAC to comply with the collective bargaining agreement grievance procedures demands more probing scrutiny.

Relying on *Schneider Moving & Storage Co. v. Robbins*, 466 U.S. 364 (1984), and *Flynn v. Ohio Building Restoration, Inc.*, 260 F. Supp. 2d 156 (D.D.C. 2003), the Trustees respond that, assuming the International BAC is in fact a third-party beneficiary, the International BAC nonetheless remains immune from the grievance procedures contained within the collective bargaining agreements.  The Trustees' cited authority, however, examines only whether or not a pension fund trustee, not a union, escapes the demands of a grievance/arbitration provision by virtue of its status as a third-party beneficiary to a collective bargaining agreement.

Indeed, it is fairly well settled that, in the absence of an unambiguous expression by the parties to the contrary, pension funds are not required to exhaust collective bargaining agreement arbitration procedures prior to filing an action for collection of delinquent contributions.  *See, e.g., Connors v. Link Coal Co.*, 970 F.2d 902, 906 (D.C. Cir. 1992) ("[T]rustees of funds for the benefit of employees and their families, should enjoy a status *superior* to that of ordinary [third-party beneficiaries], and should be free of the usual rule that any defense a promisor would have against the promisee can be invoked against the [third-party beneficiary].") (emphasis in original) (citing *Schneider*, 466 U.S. at 370–71 & n.11);  *Flynn v. Dick Corp.*, 384 F. Supp. 2d 189, 202 (D.D.C. 2005) ("[P]ensions funds are not required to exhaust collective bargaining agreement arbitration procedures prior to filing an action for collection of delinquent contributions.") (citing ERISA LITIGATION HANDBOOK, § 7.01(H) (Aspen 2004)).  The question then, is whether an international union is equally deserving of this freedom from a procedural hurdle.

In *Schneider*, the Supreme Court articulated the policy considerations that militated against a presumption that pension fund trustees should follow the grievance procedures contained in collective bargaining agreements.  While the Court acknowledged the existence of a national labor policy favoring arbitration based on a belief that "[arbitration] furthers the national labor policy of peaceful resolution of labor disputes and thus best accords with the parties' presumed objectives in pursuing collective bargaining," *Schneider*, 466 U.S. at 372–73, the court found such a presumption inapplicable to pension fund trustees.  The Court held that:

> Arbitration promotes labor peace because it requires the parties to forgo the economic weapons of strikes and lockouts.  Because the trustees of employee-benefit funds have no recourse to either of those weapons, requiring them to arbitrate disputes with the employer would promote labor peace only indirectly, if at all.  We conclude, therefore, that the presumption of arbitrability is not a proper rule of construction in determining whether arbitration agreements between the union and the employer apply to disputes between trustees and employers, even if those disputes raise questions of interpretation under the collective-bargaining agreements.

*Id.* at 372.

The pension fund trustees' exemption from the presumption of arbitrability, then, is a function of their unique role within the realm of labor relations.  *See, e.g., Robbins v. Prosser's Moving & Storage Co.*, 700 F.2d 433, 442 (8th Cir. 1983) ("We conclude that the national pension policy . . . , and the rights of plan beneficiaries, can be vindicated as Congress seems to have intended only if trustees are given a direct right of access to the courts.").  As other courts have observed, there are benefits to precluding certain contract law defenses in actions by pension fund trustees to collect delinquent contributions, among them, preventing relatively simple proceedings from devolving into expensive and time-consuming litigation over the nature

of the employer-union relationship.[11]  *See Louisiana Bricklayers & Trowel Trades Pension Fund v. Alfred Miller Gen. Masonry Contracting Co.*, 157 F.3d 404, 408 (5th Cir. 1998); *Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir. 1992); *Benson v. Brower's Moving & Storage*, 907 F.2d 310, 314 (2d Cir. 1990); *Southwest Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 773 (9th Cir. 1986).

That said, the pension fund trustee's exemption from the traditional application of third-party beneficiary rules of contract is an aberration.  *See Connors*, 970 F.2d at 906; *Bituminous Coal Operators' Assoc., Inc. v. Connors*, 867 F.2d 625, 632 (D.C. Cir. 1989) ("[A] pension fund is 'not a typical third-party beneficiary.'") (citing *Lewis v. Benedict Coal Corp.*, 361 U.S. 459, 468 (1960)).  As such, the extension of this rule to an international union is not axiomatic. Rather, any gain from expanding this exception must be weighed against the dangers in allowing a party to receive the benefits of a contract, without the attendant burden.

As the Supreme Court recognized in *Schneider*, the "general rule" is that the "promisor may assert against the beneficiary any defense that he could assert against the promisee if the promisee were suing on the contract."  466 U.S. at 370 (citing Restatement (Second) of Contracts

---

[11]  Other factors also support the pension fund trustees' exemption from grievance/arbitration clauses.  The Sixth Circuit has stated that:

> [b]ecause employee benefit plans frequently remain obligated to pay benefits to employees even when employers do not make their required contributions, and because "anything less may well saddle the plans with unfunded obligations," *Central States Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1153 (7th Cir. 1989), Congress has given these plans the upper hand in § 515 litigation in order to permit "efficacious[ ]" recovery of "delinquent contributions," 126 Cong. Rec. 22,039 (1980) (remarks by Rep. Thompson).

*Plumbers & Pipefitters Local Union No. 572 Health & Welfare Fund v. A&H Mech. Contractors, Inc.*, 100 Fed. Appx. 396, 402 (6th Cir. 2004).

12

§ 309, cmt. b (1981); S. Williston, Contracts § 395 (3d ed. 1959); 4 A. Corbin, Contract § 819

(1951)); *see also Bituminous Coal Operators' Assoc.*, 867 F.2d at 632 ("In the usual case, a

third-party beneficiary that brings a contract claim steps into the shoes of the promisee and is

therefore subject to any claim or defense that the promisor would have against the promisee.").

The reason for such a rule, the court posits, is the inherent inequity in widening the class of

individuals that can recover from a contract, yet at the same time narrowing the defendant's

available defenses.  Indeed, other courts have been given pause by the danger in allowing such a

practice in the pension fund trustee context, though deferred to the relevant precedent, discussed

*supra*, which urged that grievance procedures need not be followed.  *Flynn v. Dick Corp.*, 384. F.

Supp. 2d at 202 n.8 ("The Plaintiff would like to hold the Defendant to the onerous terms of the

Florida [collective bargaining agreement] while simultaneously sidestepping those terms that

might serve to protect or assist the Defendant.  It is precisely because the International Union [the

plaintiff] is not a party to the agreement that its invocation by that non party is inherently

troublesome.").[12]

　　　Here, the International BAC benefits from the terms of the disputed collective bargaining

agreements.  There is a value to the union in the employer's automatic deduction of union

dues—the "dues checkoff" of which the parties speak.  *See Duffy Tool & Stamping, LLC v.*

*NLRB*, 233 F.3d 995, 998 (7th Cir. 2000) ("Since it probably is worth more to the union not to

---

[12]   The court recognizes that the reference in the quotation is to the "International Union,"
not the Trustees.  The court believes, however, that the party indicated as "plaintiff" should read
as the "Trustees," since, as in the instant case, the International Union was not a party to the
action.  Morever, in addressing the defendant's argument that the plaintiff had not exhausted the
grievance procedure in the relevant collective bargaining agreement, the court invoked the rule
that "pension funds are not required to exhaust collective bargaining agreement arbitration
procedures . . . ."  *Id.* at 202.

have to dun the workers for their union dues than it costs the employer to deduct the dues from the worker's paycheck and remit them to the union, the union may be willing to give a little in bargaining over wages in order to get the dues checkoff.").  Because the International BAC receives this benefit, the court sees no reason why the International BAC should not be required to shoulder a certain portion of the "burden" of the collective bargaining agreements and comply with the grievance/arbitration terms.  Albeit in a somewhat different context, at least one other court has held that non-signatories to an arbitration agreement may be "bound by that agreement through the application of 'traditional principles of contract and agency law,'" *see Flexi-Van Leasing, Inc. v. Through Transp. Mut. Ins. Assoc., Ltd.*, 108 Fed. Appx. 35, 40 (3d Cir. 2004), and the court finds that the instant case demands the same conclusion.

The parties have offered no reason why the International BAC deserves the same freedom from basic third-party beneficiary law afforded pension fund trustees, and as such, the court holds that—because the grievance procedures in the collective bargaining agreements were not followed—Tiede-Zoeller's motion is granted with respect to any claims for "dues checkoffs" on behalf of the International BAC.[13]

---

[13] Because the court has dismissed the Trustees' claims for dues checkoffs, the court need not address Tiede-Zoeller's argument that the National Labor Relations Board ("NLRB") has exclusive jurisdiction over the "dues checkoff" claim—characterized as an "unfair labor practice" by Tiede-Zoeller—pursuant to Section 10 of the National Labor Relations Act, as amended, 29 U.S.C. § 160.  Were the court to reach the question, the court would find that this court has concurrent jurisdiction over such claims.  Though the NLRB has jurisdiction over claims of unfair labor practices, Section 301 of the LMRA, 29 U.S.C. § 185, grants jurisdiction to federal courts over actions to enforce a collective bargaining agreement.  Interpreting this jurisdiction, the Supreme Court has held that the "authority of the [NLRB] to deal with an unfair labor practice which also violates a collective bargaining contract . . . does not destroy the jurisdiction of the courts in suits under § 301 [of the LMRA]."  *See Smith v. Evening News Assoc.*, 371 U.S. 195, 197 (1962); *see also Int'l Org. of Masters, Mates & Pilots v. Trinidad Corp.*, 803 F.2d 69, 73–74 (2d Cir. 1986).

**C.  The "Traveling Contractors" Clause**

At least in part, the Trustees' claim for delinquent contributions is based on obligations incurred through the Southern Tier Agreement, which the Trustees allege was executed by TZ Corp.  Defendants contend that the bulk of any potential liability arising from the Southern Tier Agreement would result from operation of the Traveling Contractors clause.  Accordingly, Tiede-Zoeller asks the court to define, as a matter of law, the scope of the clause's coverage.  The clause reads as follows:

> When the Employer has any work specified in Article III of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by an agreement with another affiliate of the International Union of Bricklayers and Allied Craftsmen, the Employer agrees to abide by the full terms and conditions of the Agreement in effect in the jobsite area.  Employees covered by this Agreement who are sent to projects outside of this area covered by this Agreement shall be paid at least the established minimum wage scale specified in Article VIII of this Agreement but in no case less than the established minimum wage scale of the local Agreement covering the territory in which such work is being performed plus all contributions specified in the jobsite local Agreement.  The Employer shall in all other matters by [sic] governed by the provisions established in the jobsite local Agreement.  If employees are sent to work on a project in an area where there is no local Agreement covering the work specified in Article III of this Agreement, the full terms and conditions of this Agreement shall apply.

Am. Compl., Ex. A (Southern Tier Agreement, Article XIV).

At the center of the controversy is the first sentence of the agreement.  Tiede-Zoeller

---

Tiede-Zoeller's citation to *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co., Inc.,* 484 U.S. 539 (1988) is unavailing.  There, the court decided the narrow question of whether an "employer's unilateral decision to refuse to make post-contract contributions constitutes a violation of the NLRA." *Id.* at 549.  In that case, the plaintiff did not maintain that the alleged delinquent contributions, unions dues or otherwise, accrued under a valid collective bargaining agreement.  Instead, it addressed the "narrow category of suits seeking recovery of unpaid contributions accrued during the period between contract expiration and impasse." *Id.* at 545 (quotations omitted).

argues that this sentence obligates TZ Corp., when performing work outside of the area governed by the Southern Tier Agreement, to comply with the terms of any agreement that it has with a local union affiliate having jurisdiction over the area in which work is to be performed.  The Trustees, however, believe that such an interpretation would do nothing more than reaffirm a duty that TZ Corp. has an independent obligation to fulfill—thus rendering the term nothing more than surplusage.  Instead, they offer a decidedly more expansive reading of the clause. According to the Trustees, the first sentence mandates that TZ Corp., when operating beyond the boundaries of the Southern Tier Agreement, comply with the terms of the standard collective bargaining agreement in effect for the area—assuming one exists—regardless of whether or not TZ Corp. is a signatory to that agreement.

### 1.  Ambiguity of Traveling Contractors Clause

In order to resolve this question as a matter of law, the court must first determine that the language of the contract is "unambiguous."  *See, e.g., America First Inv. Corp. v. Goland*, 925 F.2d 1518, 1520 (D.C. Cir. 1991).  "When, however, the language is unclear and the search for intent extends beyond the four corners of the agreement, the intended meaning of the contract is a disputed and, necessarily, material question of fact and [judgment as a matter of law] is improper."  *NRM Corp. v. Hercules Inc.*, 758 F.2d 676, 682 (D.C. Cir. 1985).

In this case, both parties cite a number of cases interpreting nearly identical language that supports each of their respective interpretations of the contract.  In light of this fact, it is difficult

for this court to arrive at any conclusion other than that the language of the Traveling Contractors

clause is susceptible to more than one reasonable interpretation, and therefore ambiguous.[14]

In *Flynn v. Beeler Barney Associates Masonry Contractors, Inc.,* No. 02-1411, slip op.

(D.D.C. August 8, 2004), the court was persuaded that plaintiff's interpretation of the clause

represented the "unambiguous" intent.  The court stated that,

> [i]t would make little sense to interpret the traveling contractors clause as only applying
> when the employer works in a jurisdiction where *that same employer* has signed a
> separate CBA with another BAC affiliate because, if the employer was signatory to an
> agreement in the jobsite area, there would be no need for a traveling contractors clause.
> Thus, [the defendant] is obligated to make contributions consistent with the terms of the
> BAC collective bargaining agreement covering the jurisdiction of the jobsite even where
> [the defendant] was not a signatory to the jobsite agreement.

*Id.* at 13.

In stark contrast to this holding, however, the court in *Trustees of the Bricklayers &*

*Allied Craftworkers v. Driscoll*, 165 F. Supp. 2d 502 (S.D.N.Y. 2001), found that the first

sentence of the Traveling Contractors clause "unambiguously" expressed a different intent:

> The first sentence of the traveling contractors clause does not obligate the Company to
> make contributions where it had no agreement with any other BAC affiliate . . . .  It says
> that if Driscoll (the employer) does work as specified in Article IV (masonry) in an area
> of the state outside of Local 5's jurisdiction where Driscoll has an agreement with another
> BAC local (the other local), then Driscoll pays benefits in accordance with its agreement
> with the other local.

*Id.* at 511–12.

---

[14]  A contract is ambiguous if it is "'reasonably susceptible of different constructions or
interpretations,'" *Consol. Gas Transmission Corp. v. FERC,* 771 F.2d 1536, 1544 (D.C. Cir.
1985) (quoting *Lee v. Flintkote Co.,* 593 F.2d 1275, 1282 (D.C. Cir. 1979)), not simply "because
the parties later disagree on its meaning."  *Bennett Enters., Inc. v. Domino's Pizza, Inc.,* 45 F.3d
493, 497 (D.C. Cir. 1995).  The court determines the plain meaning of a contract "from the
language used by the parties to express their agreement." *WMATA v. Mergentime Corp.,* 626 F.2d
959, 961 (D.C. Cir. 1980).  "In performing this task, [the court] should construe the contract as a
whole so as to give meaning to all of the [contract's] express terms."  *Id.*

These conflicting opinions evidence the ambiguity in the Traveling Contractors clause,[15] and the court believes that it would be imprudent to resolve this ambiguity at the current stage of the litigation.  As discussed, *supra*, Tiede-Zoeller has moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), and thus it is confined to the four corners of the complaint, as well as the attached documents.  While the parties have submitted declarations that purport to address the meaning of the Traveling Contractors clause and the intent of the parties when drafting this provision, in the absence of discovery on the issue, and on the limited record before the court, the court can arrive at no conclusions as a matter of law.[16]  As a result, Tiede-Zoeller's motion is denied with respect to its arguments concerning the unambiguous meaning of the Traveling Contractors clause.

## 2.  Traveling Contractors Clause and § 302(a) of the LMRA

In the alternative, Tiede-Zoeller submits that—under any reading—the Traveling Contractors clause is a violation of Section 302(a) of the LMRA, 29 U.S.C. § 186(a), and therefore unenforceable.  Section 302(a) states that, in general, employers are prohibited from making payments to union affiliated representatives and entities, including union established

---

[15]  In *Flynn v. Dick Corp.*, 384 F. Supp. at 199 n.7, the court also recognized the ambiguity in a substantially similar traveling contractors clause.  *See also, Trustees of the B.A.C. Local 32 Ins. Fund v. Ohio Ceiling & Partition Co.*, 48 Fed. Appx. 188, at 195 (6th Cir. 2002) ("We find that the first sentence of the BAC Traveling Contractor clause is susceptible to more than one interpretation. The phrase 'within the area covered by an agreement with another affiliate of the International [BAC]' could refer to an agreement between OCP and the BAC affiliate, or it could refer to an agreement between any employer and the BAC affiliate.").

[16]  The factual nature of the determination that Tiede-Zoeller asks the court to makes is demonstrated by the posture of the vast majority of its cited authority.  Nearly all the cases cited by defendant resolved summary judgment motions where the parties had offered testimony related to the issue of intent and the Traveling Contractors clause.  *See Driscoll,* 165 F. Supp. 2d at 511–12 (plaintiff testified that the disputed language in the first sentence meant "an agreement between the jobsite local and Driscoll Masonry").

ERISA funds, beyond narrowly prescribed exceptions.  Section 302(c) of the LMRA delineates the conditions that must be satisfied so as to permit exemption from this default prohibition, among them, that when a contribution is made to a trust fund, "the detailed basis on which such payments are to be made is specified in a written agreement with the employer."  29 U.S.C. § 186(c)(5)(B).  Tiede-Zoeller argues that the Traveling Contractors clause cannot satisfy this condition.

The crux of Tiede-Zoeller's argument is that, assuming that the Traveling Contractors clause is given the extra-territorial reach that the Trustees desire, the text of the Southern Tier Agreement does not specifically detail the manner in which TZ Corp. would make contributions to the Funds.  This is, of course, true.  Under the Trustees' interpretation of the Traveling Contractors clause, TZ Corp. would be obligated to make contributions in accordance with the collective bargaining agreements that govern a given jobsite, whether or not TZ Corp. is a signatory to such agreements.

These various collective bargaining agreements are not attached to the Southern Tier Agreement.  However, the court believes that such agreements are incorporated by reference.  As there is no blanket prohibition on incorporation by reference in collective bargaining agreements, Tiedde-Zoeller's motion to dismiss is denied to the extent it is based on Section 302 of the LMRA.[17]

---

[17]  There is some persuasive authority that suggests, under certain circumstances, a traveling contractors clause may run afoul of Section 302(a), though the court does not believe this authority is applicable to the case *sub judice*.  In *Trustees of the Nat'l Automatic Sprinkler Indus. Pension Fund v. Fairfield County Sprinkler Co.,* 243 F.3d 112 (2d Cir. 2001), the Second Circuit held that the "written agreement" condition of Section 302(c)(5) was not satisfied by the incorporation, via a traveling contractors clause, of a separate collective bargaining agreement. 243 F.3d at 117.  In *Fairfield*, the decisive factor in the court's analysis was that—despite the

**D. Bifurcation**

Finally, Tiede-Zoeller urges the court to bifurcate the litigation of the issues presented by this case. Tiede-Zoeller proposes that, initially, discovery be limited to the validity and scope of the Southern Tier Agreement. According to Tiede-Zoeller, this is "the fundamental issue in this case," and therefore should be disposed of first.

To be sure, the Southern Tier Agreement plays a central role in this litigation. Nonetheless, the court believes that the Southern Tier Agreement is not dispositive of the entirety of the Trustees' claims. The Trustees have cited in their complaint at least three other collective bargaining agreements—the New York Agreement, the Georgia June Agreement, and the Georgia July Agreement—that they allege provide a basis for liability. Moreover, the Trustees have raised the issue of an "alter-ego," relationship between TZ Corp., TZ Inc., and TZ Associates. This relationship does not gain importance only if the Southern Tier Agreement is found to be a valid, binding contract. While Tiede-Zoeller minimizes the scope of liability in the absence of an enforceable Traveling Contractors clause, the court refuses to rely solely on Tiede-Zoeller's uncontested representations.

Additionally, the Trustees correctly argue that bifurcating the issues would result in duplicative discovery. The Trustees cite Thomas Altenburg, part-owner of TZ Associates, and president of TZ Inc., as an example of an individual that will likely have testimony that speaks to

---

requirement that "'an instrument may incorporate by reference only the terms of an instrument already in existence,'" *Id*. (quoting *Bricklayers, Masons & Plasterers Int'l. v. Stuart Plastering Co.*, 512 F.2d 1017, 1029 (5th Cir 1975)—the "incorporated" document was not in effect at the time the principal document was executed. *Id.* at 118. In the instant case, *Fairfield*'s guidance is of little use as defendant has not directed the court's attention to any particular collective bargaining agreements incorporated into the Southern Tier agreement that would violate the prohibition on incorporating agreements not in existence.

a number of outstanding issues.  Due to his role in at least two of the Tiede-Zoeller companies, it appears his testimony would be relevant to the alter-ego issue and, given that he has also provided a declaration speaking to Ms. Graap's authority to enter into the Southern Tier Agreement, he is also relevant to a central issue impacting the validity of the Southern Tier Agreement.  Presumably there are other witnesses that would have information relevant to various aspects of this litigation.

The court, therefore, concludes that piecemeal discovery would not result in the efficient prosecution of this case and, accordingly, denies Tiede-Zoeller's motion to bifurcate.

### III.  CONCLUSION

For the aforementioned reasons, it is this 24th day of January, 2006, hereby

**ORDERED** that Tiede-Zoeller's motion to dismiss [Dkt. #16] is **GRANTED** in part and **DENIED** in part, and Tiede-Zoeller's motion to bifurcate [Dkt. # 26] is **DENIED**.


Henry H. Kennedy, Jr.
United States District Judge